IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MEDPACE, INC. | : | |
|     Plaintiff, | : | Case No. 1:16-cv-00830-WOB |
| | : | |
| v. | : | Judge Bertelsman |
| | : | |
| INSPIREMD, LTD. | : | **SECOND AMENDED COMPLAINT** |
| | : | |
| | : | **(JURY DEMAND ENDORSED** |
| | : | **HEREON)** |
|     Defendant. | : | |

Now comes Plaintiff Medpace, Inc. ("Medpace" or "Plaintiff"), by and through counsel, and for its Second Amended Complaint against Defendant InspireMD, Ltd. (hereinafter "Inspire" or "Defendant"), hereby states as follows:

### PARTIES

1. Plaintiff hereby incorporates, as if fully rewritten herein, all other allegations of the Second Amended Complaint.

2. Medpace is an Ohio corporation with its principal place of business and operations in Hamilton County, Ohio.

3. InspireMD, Ltd. is a limited company which was formed under the laws of the State of Israel and whose principal place of business is in Tel Aviv, Israel.

4. Defendant is a wholly-owned subsidiary of its parent corporation, InspireMD, Inc., a Delaware corporation whose principal place of business is in Boston, Massachusetts.

### JURISDICTION AND VENUE

5. Plaintiff hereby incorporates, as if fully rewritten herein, all other allegations of its Second Amended Complaint.

11751713v1

6.  This Court has jurisdiction over this matter and the parties named herein, pursuant to 28 U.S.C.§1332 and 28 U.S.C.§1441(b), because complete diversity of citizenship exists between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00, exclusive interest and costs.

7.  Venue is proper in this Court pursuant to 28 U.S.C.§1391 because, among other reasons, a substantial part of the events giving rise to this action took place in this district.

8.  Defendant entered into a contract with Plaintiff in Hamilton County, Ohio for Plaintiff to provide clinical trial services to Defendant in Hamilton County, Ohio; Defendant transacted business in Hamilton County, Ohio with Plaintiff; payment was due from Defendant to Plaintiff in Hamilton County, Ohio; Defendant made some payments to Plaintiff in Hamilton County, Ohio; Defendant breached its contract with Plaintiff in Hamilton County, Ohio; and Defendant caused injury/damage to Plaintiff in Hamilton County, Ohio.

9.  In addition, Plaintiff's and Defendant's contract with each other in this matter provides that "all disputes and claims arising under this agreement shall be resolved exclusively in a court of applicable jurisdiction located in Cincinnati, Ohio and each party consents to the venue of any such action." (*See* Master Services Agreement and redacted Task Order # 1 attached hereto collectively as Exhibit "1").

## COUNT ONE
## (BREACH OF CONTRACT)

10. Plaintiff hereby incorporates, as if fully rewritten herein, all other allegations of its Second Amended Complaint.

11. Plaintiff and Defendant entered into a contract for Plaintiff to provide clinical trial services with respect to Defendant's medical device, a stent. (*See* Master Services Agreement

and Task Order #1 which shall be collectively referred to as the "Contract" and which is attached hereto as Exhibit "1").

12. In exchange for Plaintiff's clinical trial services, Defendant agreed to make payments to Defendant under the Contract.

13. The Contract sets forth the Scope of Work that Plaintiff was required to perform under the Contract and the terms of Plaintiff's compensation.

14. Under the Contract, Defendant agreed to pay Plaintiff a fixed amount pursuant to the Project Budget and Payment Schedules included in Task Order # 1. (See Section 4(A) "Project Budget, Payment Schedule, and Terms" in Master Services Agreement and Appendix 4 "Payment Schedule" of Task Order # 1 contained in Contract, Exhibit "1").

15. The Contract also set forth a Payment Schedule for the payments to be made by Defendant to Plaintiff. (See Exhibit "1" at Task Order # 1, Appendix 4 - Payment Schedule).

16. For all payments due under the Contract, Defendant was required to make payment to Plaintiff within thirty (30) days after receipt of Plaintiff's written invoice and the requisite supporting documentation (the "Payment Period"). (*See* Exhibit "1", Section 3 of Task Order # 1).

17. The Master Services Agreement portion of the Contract could be terminated by Plaintiff if Defendant defaulted on its obligations under the Contract, which defaults could include Defendant's failure to pay Plaintiff within the Payment Period and Defendant's failure to cure its default within fifteen (15) days of its receipt of Plaintiff's notice of default. (See Exhibit "1", Section 6(C) of the Master Services Agreement).

18. Under the Contract, Defendant agreed that in the event of termination of a Task Order before completion, Defendant would pay Plaintiff for all Services rendered prior to

11751713v1          3

termination and any non-cancelable expenses incurred in connection with Medpace's services thereunder. (See Exhibit "1", Section 6(E) of Master Services Agreement).

19. If Defendant was terminated by Plaintiff before the completion of a Task Order, Plaintiff would submit to Defendant an itemized accounting of its Services performed prior to termination, expenses incurred pursuant to performance of Plaintiff's Services, non-cancelable expenses incurred by Plaintiff, and payments received by Plaintiff. (See Exhibit "1", Section 6(E) of Master Services Agreement).

20. Defendant had thirty (30) days from receipt of such itemized accounting to pay the balance to Plaintiff.

21. Plaintiff substantially performed and/or fully performed under the Contract by providing the clinical trial services under the Contract.

22. Defendant made some payments under the Contract to Plaintiff, but Defendant failed to make all of the payments owed to Plaintiff under the Contract.

23. Defendant failed to make certain payments to Plaintiff which were to be paid by Defendant to Plaintiff in quarterly payments regardless of the amount of work performed by Plaintiff during a particular quarter. (See Section 4(A) "Project Budget, Payment Schedule, and Terms" in Master Services Agreement of Contract, Exhibit "1").

24. More particularly, Defendant failed and/or refused to pay Plaintiff four quarterly payments which were due to Plaintiff in 2015 under the Contract.

25. The invoices of Plaintiff that Defendant failed and/or refused to pay to Plaintiff are as follows: (1) 3/19/15 invoice for $150,617.00; (2) 6/15/15 invoice for $150,617.00; (3) 8/30/15 invoice for $100,411.00; (4) 11/18/15 invoice for $66,941.00.

26. Pursuant to the Contract, the interest rate on Plaintiff's past due invoices to Defendant is 18% per annum. (See Section 4(D) of Master Services Agreement, Exhibit "1").

27. As such, the interest alone owed by Defendant to Plaintiff on the four above-described invoices totals in excess of $260,000.00.

28. Defendant also failed to pay Plaintiff the pass through costs of at least $5,185.00 that Plaintiff is authorized to receive from Defendant under the Contract.

29. On or about November 24, 2015, Plaintiff issued a Notice of Termination to Defendant, as required by the Contract, due to Defendant's repeated failures to pay Plaintiff during the Payment Period, and in particular, Defendant's failure to pay the above-described invoices to Plaintiff and due to Defendant's failure to cure these breaches of the Contract. (See Plaintiff's Notice of Termination to Defendant attached hereto as Exhibit "2")

30. Pursuant to the Contract, since Plaintiff properly terminated Task Order # 1 before completion due to Defendant's breaches of the Contract, Defendant is responsible and has agreed to pay Plaintiff for all Services rendered pursuant to unfinished Task Order # 1 prior to such termination and any non-cancelable expenses incurred in connection with Plaintiff's performance of services thereafter. (See 6(E) of "Termination" provision of Master Services Agreement, Exhibit "1").

31. Pursuant to the Contract, Plaintiff submitted to Defendant in its Notice of Termination an itemized accounting of Services performed, expenses incurred pursuant to the performance of the services, non-cancelable expenses incurred by Plaintiff related to the unfinished Task Order, and payments received from Defendant so as to put Defendant on notice of the balance of the total Direct Fees to to be paid to Plaintiff under the terms of the Contract.

(See 6(E) of "Termination" provision of Master Services Agreement, Exhibit "1" and Exhibit "2").

32. In contravention of the Contract, Defendant has failed to pay the balance owed to Plaintiff within thirty (30) days after receipt of Plaintiff's itemized accounting that was provided to Defendant. (See 6(E) of "Termination" provision of Master Services Agreement, Exhibit "1" and Exhibit "2", Notice of Termination which contains itemized accounting).

33. Despite receiving Plaintiff's Notice of Termination, Defendant has failed and/or refused to pay to Plaintiff the above-described amounts as required by the Contract.

34. Defendant has breached its contract with Plaintiff by, among other things, failing to make payment to Plaintiff pursuant to the Contract and by failing to cure its breaches of the Contract as previously described herein.

35. Defendant breached its Contract with Plaintiff and, in particular, Defendant breached Sections 6(C) and 6(E) of the "Termination" Section of the Master Services Agreement and Sections 4(A), 4(B), 4(C), and 4(D) "Project Budget, Payment Schedule, and Terms" section of the Master Services Agreement and Section 3 of Task Order # 1 of the Contract by failing to make the required payments to Plaintiff under the Contract and failing to cure its defaults even after being put on notice by Plaintiff of Defendant's defaults under the Contract.

36. Defendant was to pay Plaintiff Direct Fees in excess of $3.5 million pursuant to Section 4(A) of the Master Services Agreement as set forth in the Payment Schedule included in the Task Order. (See Section 4(A) of Master Services Agreement and Task Order # 1 at Appendix 4 "Payment Schedule", Exhibit "1").

37. Due to its breach(es) of contract, and as specifically set forth in Plaintiff's Notice of Termination to Defendant, Defendant owes Plaintiff the principal sum of at least

$1,964,922.00+, plus pass through expenses of at least $5,185.00, plus continuing interest at 18% per annum, costs, and other damages. (See Exhibits "1" and "2").

38. As a result of Defendant's failure to pay Plaintiff the monies due and owing to Plaintiff under the Contract, Plaintiff has been damaged due to Defendant's breach of contract in an amount in excess of $1,964,822.00 as previously described herein.

## COUNT TWO
### (UNJUST ENRICHMENT)

39. Plaintiff hereby incorporates, as if fully rewritten herein, all other allegations of the Second Amended Complaint.

40. In the alternative and/or to the extent that Defendant claims that a valid and enforceable contract between Plaintiff and Defendant does not exist, Defendant has benefitted and been unjustly enriched by virtue of the clinical trial services provided to it by Plaintiff without just compensation.

41. The benefits conferred upon Defendant have been to the expense of and the detriment of Plaintiff.

42. Defendant knew of the benefits that it was to receive and did receive from Plaintiff as a result of Plaintiff's clinical trial services, e.g., pointing out to Defendant the safety concerns and the efficacy of the item(s) Defendant was having tested, and Defendant retained these benefits.

43. Plaintiff has been damaged due to Defendant's conduct as previously described herein.

## COUNT THREE

### (PROMISSORY ESTOPPEL)

44. Plaintiff hereby incorporates, as if fully rewritten herein, all other allegations of its Second Amended Complaint.

45. In the alternative and/or to the extent Defendant claims that a valid and enforceable contract does not exist between Plaintiff and Defendant, Defendant and its representatives including, but not limited to, Craig Shore and Alan Milinazzo, promised to pay Plaintiff in exchange for the clinical trial services Plaintiff provided to Defendant prior to and after Plaintiff undertook the clinical trial services work for Defendant.

46. As a result of Defendant's promises, Plaintiff took various actions, including providing services and continuing to provide services and incurring other costs and expenses.

47. Due to its reasonable and justified reliance upon Defendant's promises which were untrue, Plaintiff has been damaged due to Defendant's conduct as previously described herein.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for an amount in excess of $1,967,822.00+, plus interest, costs, attorney's fees and expenses, and any and all other relief available at law and/or in equity or that the Court deems just and proper.

Respectfully submitted,

/s/ Jeffrey P. McSherry
Jeffrey P. McSherry (0055993)
Bricker & Eckler LLP
201 East Fifth Street, Suite 1110
Cincinnati, Ohio 45202
Telephone: 513-870-6686
Facsimile: 513-870-6699
jmcsherry@bricker.com
*Attorney for Plaintiff*
*Medpace, Inc.*

## JURY DEMAND

Plaintiff demands a trial by jury on all issues and claims in this matter.

/s/ Jeffrey P. McSherry
Jeffrey P. McSherry

## CERTIFICATE OF SERVICE

A copy of the foregoing *Second Amended Complaint* has been filed via the Court's CM/ECF system this 5th day of June, 2017, which provides notification to all attorneys of record.

/s/ Jeffrey P. McSherry
Jeffrey P. McSherry