**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

MEDPACE, INC.

                             **Case No.  1:16cv00830**

        Plaintiff,

                             **JUDGE BERTELSMAN**

    vs.

INSPIREMD, Ltd.
          Defendant.

**DEFENDANT INSPIREMD, LTD.'S MEMORANDUM**
**OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**
**<u>AS TO PLAINTIFF'S AFFIRMATIVE CLAIMS FOR RELIEF</u>**

Ted T. Martin (Ohio - 0014204)
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202-4074
Telephone:  (513) 929-3400
Facsimile:  (513) 929-0303
tmartin@bakerlaw.com

Jonathan D. Pressment (*Admitted Pro Hac Vice*)
William Feldman (*Admitted Pro Hac Vice*)
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Telephone:  (212) 918-8961
Facsimile:  (212) 884-9561
Jonathan.Pressment@haynesboone.com
William.Feldman@haynesboone.com

*Attorneys for Defendant InspireMD, Ltd.*

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   FACTUAL BACKGROUND ..................................................................... 3

      A.    The Parties ..................................................................................3

      B.    The Agreements .........................................................................4

      C.    The Task Order's Project Budget, Project Schedule and Payment Schedule ..........4

      D.    Inspire's Termination of the Task Order .................................................6

      E.    Medpace's Subsequent Purported Termination of the Task Order ........................7

      F.    Procedural History .....................................................................8

            1.    Medpace's Complaints And Inspire's Motions To Dismiss ..................... 8

            2.    Discovery Completed.................................................................. 10

III.  STANDARDS APPLICABLE TO THE MOTION ....................................................... 11

IV.   ARGUMENT ......................................................................................... 12

      A.    Inspire Is Entitled To Summary Judgment With Respect To Medpace's Claims For Unjust Enrichment (Count Two) And Promissory Estoppel (Count Three) ..........12

      B.    Inspire Is Also Entitled To Summary Judgment With Respect To Medpace's Breach of Contract Claim (Count One) ..................................................15

            1.    Inspire Is Entitled to Summary Judgment with Respect to the Invoices. ............................................................................ 16

            2.    Inspire Is Entitled to Summary Judgment with Respect to the Remainder of Medpace's Breach of Contract Claim. .............................. 18

V.    CONCLUSION...................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................12

*Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*,
544 N.E.2d 920 (Ohio 1989) .............................................................13, 15, 19

*Bickham v. Standley*,
917 N.E.2d 330 (Ohio Ct. App. 2009).................................................13, 14

*Bruzzese v. Chesapeake Exploration, LLC*,
998 F. Supp. 2d 663 (S.D. Ohio 2014) .......................................................2

*C. Norris Mfg., LLC v. BRT Heavy Equip., LLC*,
2017 WL 1038958 (N.D. Ohio Mar. 17, 2017) ...................................13, 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................................12

*Cincom Sys., Inc. v. Novelis Corp.*,
581 F.3d 431 (6th Cir. 2009) ..................................................................12

*Corp. Comm'n Servs. of Dayton, LLC v. MCI Comm'ns Servs., Inc.*,
2009 WL 3756274 (S.D. Ohio Nov. 9, 2009)...........................................15

*Daniel E. Terreri & Sons, Inc. v. Mahoning Cnty. Bd. of Comm'rs*,
786 N.E.2d 921 (Ohio Ct. App. 2003).....................................................18

*Flynn v. State Farm Mut. Auto. Ins. Co.*,
2013 WL 950825 (S.D. Ohio Mar. 12, 2013).........................................19

*Fontbank, Inc. v. CompuServe, Inc.*,
742 N.E.2d 674 (Ohio Ct. App. 2000).....................................................15

*Freeman-McCown v. Cuyahoga Metro. Housing Auth.*,
2000 WL 1594090 (Ohio Ct. App. Oct. 26, 2000) ................................15

*Kelley v. Ferraro*,
936 N.E.2d 986 (Ohio Ct. App. 2010)....................................................15

*Klaus v. Hilb, Rogal & Hamilton Co. of Oh.*,
437 F. Supp. 2d 706 (S.D. Ohio 2006) ..................................................15

ii

*Kostelnik v. Helper*,
770 N.E.2d 58 (Ohio 2002) ...........................................................................2, 13

*Lowe's Home Ctrs., Inc. v. LL & 127, Inc.*,
147 F. App'x 516 (6th Cir. 2005) ........................................................................2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .........................................................................................12

*Miami Valley Mobile Health Services, Inc. v. ExamOne Worldwide, Inc.*,
852 F. Supp. 2d 925 (S.D. Ohio 2012) ............................................................14

*O'Neill v. Kemper Ins. Cos.*,
497 F.3d 578 (6th Cir. 2007) .......................................................................13, 14

*Premier Colorscan Instruments Pvt. Ltd. v. Q-Lab Corp.*,
2016 WL 6124430 (N.D. Ohio Oct. 19, 2016) ............................................13, 14

*Stansberry v. Air Wisconsin Airlines Corp.*,
651 F.3d 482 (6th Cir. 2011) ...........................................................................12

*Stonehenge Land Co. v. Beazer Homes Invs., L.L.C.*,
893 N.E.2d 855 (Ohio Ct. App. 2008) ..............................................................18

*Triangle Props. Inc. v. Homewood Corp.*,
3 N.E.3d 241 (Ohio Ct. App. 2013) ..................................................................18

*Wuliger v. Mfrs. Life Ins. Co.*,
567 F.3d 787 (6th Cir. 2009) ...........................................................................13

**Other Authorities**

Fed. R. Civ. P. 56 ...................................................................................................1, 12

Defendant InspireMD, Ltd. ("Inspire"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion for summary judgment as to Plaintiff Medpace, Inc.'s ("Medpace") affirmative claims pursuant to Fed. R. Civ. P. 56.

## I.     PRELIMINARY STATEMENT

As far as Medpace's affirmative claims are concerned, this is a straightforward breach of contract action in which Medpace seeks approximately $2 million in additional payments from Inspire for clinical trial services that Medpace allegedly rendered to Inspire pursuant to the terms of a Master Services Agreement (the "MSA") and Task Order (the "Task Order" and, collectively with the MSA, the "Agreements") that the parties executed in connection with a clinical trial (the "Trial") of Inspire's MGuard Prime Stent System (the "Stent") in 2013.

Medpace's Second Amended Complaint (the "SAC") asserts three causes of action -- breach of contract, unjust enrichment and promissory estoppel -- all of which allege variations of the very same claims, seeking the very same damages, arising from Medpace's contention that it is entitled to additional payments from Inspire for its alleged work on the Trial. Yet, whether or not Medpace is entitled to *any* additional payments from Inspire (beyond the more than $1.8 million that Medpace concedes Inspire has already paid) is a question of law governed by the clear and unambiguous terms of the Agreements -- both of which have already been produced. Accordingly, Medpace's claims are ripe for summary judgment. The Agreements either provide for the additional payments that Medpace seeks, or they do not. On the face of the Agreements, the answer is they do *not*. Thus, Inspire is entitled to summary judgment with respect to each of Medpace's affirmative claims for relief.

To begin, Inspire is entitled to summary judgment with respect to Medpace's quasi-contract claims for unjust enrichment (Count Two) and promissory estoppel (Count Three)

1

because it is well-settled that the doctrines of unjust enrichment and promissory estoppel do not apply when a valid and enforceable contract governs the parties' relationship. Here, there is no dispute that the Agreements are valid and legally enforceable. Medpace affirmatively alleged that the Agreements constitute "a contract" (Pressment Decl., Ex. A (SAC) ¶¶ 9, 11) and Inspire has specifically admitted that the "MSA and Task Order are valid and enforceable contracts and that their terms, as applicable, govern this dispute." (Pressment Decl., Ex. B (Inspire's Answer, Affirmative Defenses and Counterclaims (the "Answer and Counterclaims")) at 7-8 ¶¶ 40, 45.) Summary judgment is warranted as to Medpace's quasi-contract claims on this basis alone.

Moreover, even were the enforceability of the Agreements in dispute -- and it is not -- the enforceability of a contract is an issue of law that may be properly resolved on a motion for summary judgment. *See, e.g.*, *Lowe's Home Ctrs., Inc. v. LL & 127, Inc.*, 147 F. App'x 516, 521-22 (6th Cir. 2005); *Bruzzese v. Chesapeake Exploration, LLC*, 998 F. Supp. 2d 663, 675 (S.D. Ohio 2014). Here, there is no basis to find that either of the Agreements is unenforceable. Apart from the parties' admissions, on their face, the Agreements satisfy all of the requirements for the finding of a valid and enforceable contract under Ohio law -- offer, acceptance, contractual capacity, consideration, manifestation of mutual assent, and legality of object and of consideration. *See Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002).

Even absent this black-letter law, Medpace's quasi-contract claims would still fail. On its face, the Task Order's Payment Schedule provides for a total of twenty-one potential Milestone Payments, in fixed amounts, to which Medpace could even possibly make a claim. Medpace has identified only four such Milestone Payments at issue here -- four invoices totaling $468,586 in alleged Quarterly Payments (the "Invoices"). Medpace concedes that *the Invoices*, along with interest and pass through costs (which Medpace's disclosures reveal are $2,285.00) are the only

amounts "that Medpace contends it is owed *under the MSA*." (Pressment Decl., Ex. I (Medpace's Objections and Responses to Inspire's First Set of Interrogatories (the "Interrogatory Responses")) at 9.) (emphasis added.)

The balance of the $1,496,336 in fees sought by Medpace -- more than 75% of its total damage claim -- does not correspond to *any* of the potential Milestone payments permitted under the Task Order's Payment Schedule, but, rather, to alleged "Services rendered" *outside* of the Payment Schedule entirely.[1]  However, any attempt to recover such amounts -- under a theory of quasi-contract or otherwise -- is foreclosed by the express terms of the Agreements.  Thus, Medpace's attempt to look beyond the Payment Schedule for additional fees fails.

Medpace's remaining claim for breach of contract (Count One) -- by which Medpace seeks payment for the four Invoices totaling $468,586 and less than $3,000 in alleged pass through costs -- is similarly ill-fated.  In fact, each of the Invoices for which Medpace seeks payment was issued *after* Inspire terminated the Task Order, in writing, on September 23, 2014 (the "Termination Notice").  The Termination Notice has been produced and there is no dispute that Medpace received it.  To the extent Medpace questions the effectiveness of the Termination Notice, that is an issue *of law* that may be properly decided on a motion for summary judgment. Yet, Medpace offers no legitimate basis to contest the effectiveness of the Termination Notice. Thus, Inspire is entitled to summary judgment on Medpace's breach of contract claim as well.

Accordingly, Inspire should be granted summary judgment as to Medpace's claims.

## II.   FACTUAL BACKGROUND

### A.   The Parties

Medpace is an Ohio corporation in the business of "providing services related to the

---

[1]    Given that the overwhelming majority of Medpace's alleged damages is tied to its quasi-contract claims, a decision on the quasi-contract claims will go a long way toward positioning the remaining claims for mediation.

3

design and execution of clinical development programs . . . ." (Pressment Decl., Ex. A (SAC) ¶ 2; Ex. C (Medpace's Reply to Counterclaims ("Reply")) ¶ 9; Ex. D (MSA) at 1.)  Inspire is an Israeli limited liability company in the business of developing and obtaining regulatory approval for medical devices.  (Pressment Decl., Ex. A (SAC) ¶ 3; Ex. D (MSA) at 1.)

      **B.**      **The Agreements**

      In 2013, Inspire decided to enlist Medpace's services to assist "with certain clinical trials" of new medical devices including, but not limited to, the Trial of the Stent. (Pressment Decl., Ex. D (MSA) at 1; Ex. E (Task Order) at 1.)  To formalize their agreement, Inspire and Medpace executed the MSA dated May 21, 2013. (Pressment Decl., Ex. A (SAC) ¶ 11; Ex. D (MSA) at 1.)  The MSA provided that the services to be performed by Medpace would be agreed upon and set forth in one or more task orders. (Pressment Decl., Ex. D (MSA) at 1.)

      The specific terms of Medpace's engagement with respect to the Trial at issue -- including a description of the services to be provided (the "Scope of Work"), the project milestones and expected completion dates (the "Project Schedule"), a detailed budget (the "Project Budget") and a schedule of payments to be made if and when certain milestones were achieved (the "Payment Schedule") -- were set forth in the Task Order dated June 12, 2013, which was signed by both parties and expressly incorporated the provisions of the MSA by reference.  (Pressment Decl., Ex. E (Task Order) at 1-15.)

      **C.**      **The Task Order's Project Budget, Project Schedule and Payment Schedule**

      The Trial of 445 patients was scheduled to commence in May 2013 and conclude in March 2016.  (*Id.* at 10, 13.)  Apart from detailing the Scope of Work, the Task Order set forth a Project Schedule and a Project Budget, which the parties agreed would be *capped* at $3,347,035. (*Id.* at 10-13.)  The Task Order's Payment Schedule required that Inspire pay Medpace's "Direct Fees" pursuant to a schedule of twenty-one (21) *potential* Milestone Payments comprised of five

4

categories (the "Milestone Payments"): (1) a one-time payment due "Upon Execution" of the

Task Order (the "Execution Payment"); (2) payments due to Medpace once a quarter (the

"Quarterly Payments"); (3) payments tied to Medpace's enrollment and completion of work on

specific numbers of patients (the "Patient Related Payments"); (4) a one-time payment upon

completion of a Database Lock (the "Database Lock Payment"); and (5) a one-time payment for

"Delivery of Final Study Report" (the "Final Report Payment").  (*Id*. at 13.)

Under the Task Order's Payment Schedule, Quarterly Payments were due each quarter as

long as the Task Order was in effect.  Additional Milestone Payments were due if -- *and only if* --

Medpace achieved the "Milestone" to which a particular Milestone Payment was tied as follows:

**APPENDIX 4: PAYMENT SCHEDULE**
Payment Schedule

| Payment Schedule | | | | |
|---|---|---|---|---|
| Project: MGUARD3MAS | | Total Direct Fees: $ | 3,347,035 | |
| Sponsor: InspireMD Ltd. | | | | |
| Payment Number | Milestones | Approximate Invoice Date | Amount to Pay | Percentage |
| 1 | Upon Execution | 6/1/2013 | $ 502,055 | 15.0% |
| 2 | Quarterly Payment 1 | 8/31/2013 | $ 286,172 | 8.6% |
| 3 | Quarterly Payment 2 | 11/30/2013 | $ 137,228 | 4.1% |
| 4 | 85 U.S. Patients Enrolled | 1/15/2014 | $ 200,822 | 6.0% |
| 5 | Quarterly Payment 3 | 3/1/2014 | $ 200,822 | 6.0% |
| 6 | 180 U.S. Patients Enrolled | 4/15/2014 | $ 150,617 | 4.5% |
| 7 | Quarterly Payment 4 | 6/1/2014 | $ 150,617 | 4.5% |
| 8 | 290 U.S. Patients Enrolled | 7/15/2014 | $ 150,617 | 4.5% |
| 9 | Quarterly Payment 5 | 8/31/2014 | $ 150,617 | 4.5% |
| 10 | 445 U.S. Patients Enrolled | 10/31/2014 | $ 150,617 | 4.5% |
| 11 | Quarterly Payment 6 | 11/30/2014 | $ 150,617 | 4.5% |
| 12 | 85 U.S. Patients Completed | 2/14/2015 | $ 150,617 | 4.5% |
| 13 | Quarterly Payment 7 | 3/1/2015 | $ 150,617 | 4.5% |
| 14 | 180 U.S. Patients Completed | 5/16/2015 | $ 150,617 | 4.5% |
| 15 | Quarterly Payment 8 | 6/1/2015 | $ 150,617 | 4.5% |
| 16 | 290 U.S. Patients Completed | 8/15/2015 | $ 145,596 | 4.4% |
| 17 | Quarterly Payment 9 | 8/31/2015 | $ 100,411 | 3.0% |
| 18 | 445 U.S. Patients Completed | 11/30/2015 | $ 100,411 | 3.0% |
| 19 | Quarterly Payment 10 | 11/30/2015 | $ 66,941 | 2.0% |
| 20 | Database Lock | 12/28/2015 | $ 66,941 | 2.0% |
| 21 | Delivery of Final Study Report | 3/21/2016 | $ 33,470 | 1.0% |
| | | Total Payments: $ | 3,347,035 | 100.00% |

$29,294.10 (10%) of the total estimated pass-through expenses are due upon execution of this Task Order. Pass-through expenses will be billed to InspireMD on a monthly basis or as incurred.

(*Id.* at 1, 13.)

Neither Medpace nor Inspire could change the details of the Task Order -- including the

Project Budget, Payment Schedule, or Project Schedule -- without executing a written

amendment to the Task Order, known as a "Contract Amendment," signed by both parties. (Pressment Decl., Ex. D (MSA) ¶ 3.) Similarly, the MSA provides that it "shall not be amended, modified, or supplemented in any way except in writing and signed by a duly authorized representative of [Inspire] and MEDPACE." (*Id*. ¶ 19.) Finally, the MSA contains a merger clause, which states that the MSA represents "the full understanding of the Parties with respect to the subject matter hereof and supersedes all existing agreements and all other oral, written or other communications between the Parties . . . ." (*Id*.)

Inspire retained the right to terminate the MSA and/or a task order "without cause, upon giving [Medpace] sixty (60) [days] notice of such termination." (*Id.* ¶¶ 6(A), 6(B).) If Inspire elected to terminate a task order before it was completed, Inspire agreed to pay Medpace only for "Services rendered pursuant to the unfinished Task Order *prior to such termination*" and any "non-cancelable expenses incurred in connection with MEDPACE's performance of Services" under the Task Order. (*Id.* ¶ 6(E) (emphasis added).)

### D. <u>Inspire's Termination of the Task Order</u>

As of September 2014, Inspire had paid Medpace the Execution Payment and at least five Quarterly Payments due under the Payment Schedule. Yet, Medpace failed to satisfy *any* other Milestones for it to receive additional Milestone Payments under the Payment Schedule at that time. (Pressment Decl., Ex. I (Interrogatory Responses) at 7-8.) In fact, Medpace admits that it failed to meet the very first patient enrollment Milestone, which merely required that it enroll the first 85 patients in a planned 445 patient Trial. (*Id.* at 8.) As a result, Inspire terminated the Task Order, in accordance with Paragraph 6(B) of the MSA. (Pressment Decl., Ex. D (MSA) ¶ 6(B).)

Specifically, by letter dated September 23, 2014, sent from Inspire's outside consultant and project manager, Jen Foley, to Medpace's Senior Director of Regulatory Affairs, Deborah Schmalz, Inspire advised Medpace that it was terminating the Trial. (Pressment Decl., Ex. F

6

(Termination Notice) at 1.) Consistent with industry practice, Inspire instructed Medpace to "effective immediately," keep all work on the Trial "to a minimum, with the exception of safety-related issues" (as is required by law and/or regulations) -- ordering a "Complete freeze" with respect to virtually every task. (*Id.*) Medpace does not dispute that it received the Termination Notice. (Pressment Decl., Ex. I (Interrogatory Responses) at 4 (Response to Interrogatory No. 1); Ex. K (Medpace's Supplemental Responses to Inspire's First Set of Interrogatories, dated February 9, 2018 (the "Supplemental Interrogatory Responses")) at 1-2).)

Following its issuance of the Termination Notice to Medpace, Inspire made one additional Quarterly Payment to Medpace (Payment No. 11 (Quarterly Payment 6)), which was not scheduled to come due until November 30, 2014. (Pressment Decl., Ex. B (Answer and Counterclaims) at 26 ¶ 71; Ex. C (Reply) ¶ 71; Ex. K (Supplemental Interrogatory Responses) at 1-2.) This is consistent with the MSA's requirement that the termination of a task order be effective upon 60 days' written notice. (Pressment Decl., Ex. D (MSA), ¶ 6(B).)

### E. Medpace's Subsequent Purported Termination of the Task Order

On November 24, 2015 -- more than a year *after* Inspire issued *its* Termination Notice -- Medpace sent a letter to Inspire by which *Medpace* purported to terminate the Task Order based on Inspire's alleged breach of its payment obligations (the "November 2015 Letter"). (Pressment Decl., Ex. A (SAC) ¶ 29; Ex. G (November 2015 Letter).) Yet, Medpace does not allege that it ever sent Inspire a Notice of Default as would have been required under the MSA in the event of a payment default. (Pressment Decl., Ex. D (MSA), ¶ 6(C).)

Instead, Medpace asserts that the Task Order was terminated as of the date of its November 2015 Letter, which also demanded that Inspire remit a payment of $1,964,922 representing "payment of all outstanding *invoices* as well as all *Services rendered* pursuant to the unfinished Task Order." (Pressment Decl., Ex. G (November 2015 Letter) at 1 (emphasis added); Ex. H

7

(Medpace's Rule 26(a) Initial Disclosures ("Medpace's Disclosures") at 4.)

However, the only "invoices" for which Medpace contends it is still owed payment are the *four* Invoices for Quarterly Payments identified in the SAC -- Quarterly Payments 7, 8, 9 and 10 (Payment Nos. 13, 15, 17 and 19) -- totaling $468,586.  (Pressment Decl., Ex. A (SAC) ¶¶ 24-25.)  Those Invoices would only have come due *after* Inspire sent the Termination Notice to Medpace in September 2014.  Medpace admits that Inspire made every payment to which Medpace could even arguably have been entitled under the Payment Schedule as of the date of the Termination Notice.  (Pressment Decl., Ex. E (Task Order) at 13; Ex. C (Reply) ¶¶ 70-71.)

Specifically, Inspire paid Medpace a total of $1,578,128 in service fees representing payment of the following Milestone Payments: the Execution Payment (Payment 1), Quarterly Payments 1-5 (Payments Nos. 2, 3, 5, 7 and 9) and an additional Quarterly Payment (Quarterly Payment 6 (Payment No. 11)) that would not even have come due until November 30, 2014.[2] (Pressment Decl., Ex. E (Task Order) at 13; Ex. C (Reply), ¶¶ 70-71.)  The balance of $1,496,336 in fees sought by Medpace's November 2015 Letter stem from alleged "Services rendered" that were not set forth in any of the Invoices *at all*.  (Pressment Decl., Ex. H (Medpace's Disclosures) at 4 *citing* SAC, Ex. D (November 2015 Letter).)

### F.    Procedural History

#### 1.    *Medpace's Complaints And Inspire's Motions To Dismiss*

In all, Medpace has filed three versions of its claims -- a complaint and two amended complaints.  Each of the complaints asserts the very same causes of action set forth by the SAC -- breach of contract, unjust enrichment and promissory estoppel -- arising from Medpace's claim

---

[2]    The sum of: the Execution Payment ($502,055); and Quarterly Payments 1 ($286,172), 2 ($137,228), 3 ($200,822), 4 ($150,617) 5 ($150,617) and 6 ($150,617) (Pressment Decl., Ex. E (Task Order) at 13) equals the total of $1,578,128 that Medpace concedes Inspire paid. (Pressment Decl., Ex. G (November 2015 Letter) at 3.) Inspire also paid Medpace $240,134 in "pass-through expenses." (Pressment Decl., Ex. H (Medpace's Disclosures) at 4 *citing* SAC, Ex. D (November 2015 Letter).)

that it is entitled to an additional $1,967,822.00 in payments from Inspire in connection with Medpace's alleged work on the Trial.  Inspire moved to dismiss Medpace's claims on the pleadings on three occasions -- two of which achieved success.  (*See* ECF Nos. 6, 15, 21.)

Medpace filed an unopposed motion to amend its original pleading in response to Inspire's initial motion to dismiss based on Medpace's failure to name the correct party-in-interest.[3]  This Court then found that Medpace's first amended complaint was deficient because Medpace's breach of contract claim was insufficiently pled, and further cautioned the parties, with respect to Medpace's quasi-contract claims, of their obligation "to ensure that their claims are 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'"  (*See* ECF No. 19 (Order) at 2.)

Medpace's SAC asserts the very same causes of action previously asserted in its prior complaints.  The primary difference between the claims asserted in the SAC and the prior iterations of Medpace's claims is the addition of detail revealing the "four quarterly payments" for which Medpace is seeking payment under its breach of contract claim -- the Invoices. (Pressment Decl., Ex. A (SAC) ¶ 24.)  The SAC specifically identifies the Invoices as: "(1) 3/19/15 invoice for $150,617.00; (2) 6/15/15 invoice for $150,617.00; (3) 8/30/15 invoice for $100,411.00; (4) 11/18/15 invoice for $66,941.00." (*Id.* ¶ 25.)  The SAC also continues to assert claims for unjust enrichment and promissory estoppel "to the extent [Inspire] claims that a valid and enforceable contract between Plaintiff and [Inspire] does not exist." (*Id.* ¶¶ 40, 45.)

Although Inspire moved to dismiss the SAC, the Court found that Medpace offered sufficient detail to proceed with its breach of contract claim and concluded that the dismissal of Medpace's quasi-contract claims was not warranted "*at this juncture of the case*," because,

---

3    Medpace originally named Inspire's U.S. subsidiary, Inspire, Inc., as the defendant despite the fact that Inspire, Inc. was not a party to either of the Agreements at issue.  (*See* ECF Nos. 6, 8.)

despite the fact that the parties "acknowledg[ed] that the contract between them appears fully enforceable, it is possible that the contract could be found unenforceable in the future." (ECF No. 24 (Order) at 1-2) (emphasis added).)  Indeed, Medpace specifically argued that Inspire might "chang[e] course and repudiate[e] a concession it claims it will make in a brief, but not in a pleading."  (ECF No. 22 (Response to Motion to Dismiss SAC) at 15.)

Thereafter, Inspire filed its Answer and Counterclaims.  Inspire expressly admitted that it "does not dispute that the MSA and Task Order are *valid and enforceable contracts* and that their terms, as applicable, govern this dispute."  (Pressment Decl., Ex. B (Answer and Counterclaims) at 7-8 ¶¶ 40, 45 (emphasis added).)  However, Inspire denied that Medpace is entitled to any further payments under the Agreements (or otherwise). (*Id.* ¶¶ 21; 22-26; 38.)

### 2.    *Discovery Completed.*

The parties have already served and exchanged responses to written discovery requests. Based on the pleadings and discovery completed, including Medpace's: (1) Disclosures; (2) Interrogatory Responses; and (3) Objections and Responses to Inspire's First Set of Requests For Production ("Document Request Responses"), it is clear that Inspire is entitled to summary judgment with respect to Medpace's affirmative claims.  Specifically, Medpace has admitted:

- The MSA and Task Order are valid and enforceable contracts. (Pressment Decl., Ex. A (SAC) ¶¶ 11-12; Ex. B (Answer and Counterclaims) at 7-8 ¶¶ 40, 45);

- The only Milestone Payments for which Medpace is seeking payment are the four Invoices totaling $468,586 identified in Paragraphs 24 and 25 of the SAC. (Pressment Decl., Ex. A (SAC), ¶¶ 24-25; Ex. I (Interrogatory Responses) at 7, 9);

- Apart from the Invoices, the only other amounts "that Medpace contends it is owed *under the MSA*" are "interest, and pass-through costs." (Pressment Decl., Ex. I (Interrogatory Responses) at 9 (emphasis added));

- The damages sought for alleged "pass-through costs" are limited to $2,285.00. (Pressment Decl., Ex. H (Medpace's Disclosures) at 4, citing Ex. D to the SAC);

10

- The remaining $1,496,336 in fees sought by Medpace do not correspond to *any* of the Payment Schedule's Milestone Payments, but, rather, to alleged "Services rendered" *outside* of the Milestone Payments (Pressment Decl., Ex. H (Medpace's Disclosures) at 4; Ex. G (November 2015 Letter) at 2-3);

- The parties did not execute a Contract Amendment at all, let alone one that altered the Payment Schedule to permit Medpace to seeks payments for alleged "Services rendered" outside of the Milestone Payments (Pressment Decl., Ex. J (Document Request Responses) at 10-11);

- In fact, Medpace's total claim for an additional $1,964,922 in payments from Inspire, when added to the $1,818,262 that Medpace admits Inspire has already paid (inclusive of costs paid), would provide Medpace with total payments of $3,783,184 -- a windfall of nearly $150,000 *more* than Medpace would have been entitled under the agreed upon Project Budget capped at $3,639,976 had Medpace completed all of the work required of it under the Task Order *in full*. (Pressment Decl., Ex. H (Medpace's Disclosures) at 4; Ex. G (November 2015 Letter) at 1-3; Ex. E  (Task Order) at 11-12);

- Yet, Medpace concedes that it did not satisfy a single Milestone tied to patient enrollment (Payment Nos. 4, 6, 8, 10, 12, 14, 16, 18) to which $1,199,914 of the possible $3,347,035 in potential Milestone Payments were tied.  (Pressment Decl., Ex. E (Task Order) at 13; Ex. I (Interrogatory Responses) at 7-8);

- Medpace also makes no claim for Quarterly Payment 10 ($66,941); or the Final Study Report payment ($33,470) totaling $100,411 (Pressment Decl., Ex. A (SAC), ¶¶ 24-25; Ex. I (Interrogatory Responses) at 7, 9); and

- Given the Milestone Payments that Medpace concedes Inspire has already made ($1,578,128) and the Milestone Payments for which Medpace makes no claim ($1,300,325), out of the total possible Milestone Payments of $3,347,039[4] set forth under the Task Order's Payment Schedule, the total amount of Milestone Payments that Medpace could even potentially lay claim to in this action is $468,586. (Pressment Decl., Ex. A (SAC), ¶¶ 24-25; Ex. E  (Task Order) at 11-12; Ex. H (Medpace's Disclosures) at 4; Ex. I (Interrogatory Responses) at 7, 9.)

Against this backdrop, Inspire now moves for summary judgment as to Medpace's claims.

## III.    STANDARDS APPLICABLE TO THE MOTION

Summary judgment is appropriate "where the pleadings, depositions, answers to

interrogatories, admissions on file, and affidavits 'show that there is no genuine dispute as to any

---

[4]    The Task Order's Payment Schedule incorrectly computes the total potential Milestone Payments as $3,347,035.00 rather than $3,347,039.00.  (Pressment Decl., Ex. E (Task Order) at 13.)

material fact and that the movant is entitled to a judgment as a matter of law.'"  *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  A party may move for summary judgment "at any time until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b).  Indeed, "[s]ummary judgment [is] . . . as an integral part of the Federal Rules . . . designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

"'The moving party has the initial burden of proving that no genuine issue of material fact exists,' and the court must draw all reasonable inferences in the light most favorable to the nonmoving party."  *Stansberry*, 651 F.3d at 486; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of its case to defeat the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986).

The mere scintilla of evidence to support the non-movant's position is insufficient to defeat summary judgment; rather a genuine dispute of material fact exists only if "there [is] evidence on which the jury could reasonably find for" the non-moving party.  *Id.* at 252.

## IV.  <u>ARGUMENT</u>

### A.  **Inspire Is Entitled To Summary Judgment With Respect To Medpace's Claims For Unjust Enrichment (Count Two) And Promissory Estoppel (Count Three)**

As an initial matter, Inspire is entitled to summary judgment on Medpace's quasi-contract claims for unjust enrichment and promissory estoppel because the pleadings and evidence adduced through discovery confirm that there is no genuine dispute that the parties' relationship is governed by valid and enforceable contracts -- the Agreements.  Under Ohio law, the doctrines of unjust enrichment and promissory estoppel do not apply when a valid and enforceable express

12

contract governs the parties' relationship. *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 544 N.E.2d 920, 924 (Ohio 1989); *Bickham v. Standley*, 917 N.E.2d 330, 335 (Ohio Ct. App. 2009); *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009); *see O'Neill v. Kemper Ins. Cos.*, 497 F.3d 578, 583 (6th Cir. 2007).

Thus, claims for unjust enrichment and promissory estoppel should be dismissed where there is no genuine issue of material fact that a contract governs the parties' relationship. *See O'Neill*, 497 F.3d at 583 (affirming summary judgment on promissory estoppel claim where "[n]either party disputes the fact that an enforceable contract exists and governs the substance of this lawsuit."); *C. Norris Mfg., LLC v. BRT Heavy Equip., LLC*, 2017 WL 1038958, at *10-11 (N.D. Ohio Mar. 17, 2017); *Premier Colorscan Instruments Pvt. Ltd. v. Q-Lab Corp.*, 2016 WL 6124430, at *5 (N.D. Ohio Oct. 19, 2016) (summary judgment on unjust enrichment claim where "[t]here is no dispute that the parties' relationship was governed by the Agreement; Plaintiff asserts it in its Complaint and Defendant admits it in its Answer."); *Bickham*, 917 N.E.2d at 335.

Here, Medpace's unjust enrichment and promissory estoppel claims must be dismissed because there is no dispute that the MSA and Task Order are valid and enforceable contracts that governed the parties' relationship. Indeed, Medpace plainly alleges that the parties "entered into *a contract* for [Medpace] to provide clinical trial services with respect to [Inspire's] medical device . . . ." (Pressment Decl., Ex. A (SAC) ¶¶ 11-12.) Medpace's acknowledgement of this fact is understandable. The MSA and Task Order satisfy all of the requirements of a binding and valid contract: offer, acceptance, contractual capacity, consideration, manifestation of mutual assent, and legality of object and of consideration. *Kostelnik*, 770 N.E.2d at 61.

Medpace only asserts its claims in quasi-contract "in the alternative and/or *to the extent that [Inspire] claims that a valid and enforceable contract between [Medpace] and [Inspire]*

*does not exist . . . .*" (Pressment Decl., Ex. A (SAC) ¶¶ 40, 45) (emphasis added).) However, Inspire has made no such claim. Indeed, in its motion to dismiss the SAC, Inspire readily acknowledged that the Agreements are valid and enforceable contracts. (ECF No. 21-1 (Motion to Dismiss SAC) at 9, 18.) Although Medpace opposed Inspire's motion by arguing, *inter alia*, that Inspire might "chang[e] course and repudiat[e] a concession it claims it will make in a brief, *but not in a pleading*" (ECF No. 22 (Response to Motion to Dismiss SAC) at 15 (emphasis added)), Inspire has now done just what Medpace asked of it -- Inspire admitted *in its answer* that "the MSA and Task Order are valid and enforceable contracts and that their terms, as applicable, govern this dispute." (Pressment Decl., Ex. B (Answer and Counterclaims) at 7-8 ¶¶ 40, 45.) Thus, the validity and enforceability of the Agreements is not disputed.[5]

Yet, even absent this black-letter law, Medpace would *still* be precluded from seeking additional payments from Inspire under theories of unjust enrichment or promissory estoppel based on the language of the Agreements. The MSA expressly requires that "all" of Medpace's services with respect to Inspire's "clinical trials" be conducted "*in accordance with and subject to the terms of [the MSA][.]*" (Pressment Decl., Ex. D (MSA) at 1) (emphasis added).) The MSA specifically required that any service fees be paid "pursuant to the Project Budget and Payment Schedules included in each Task Order." (Pressment Decl., Ex. D (MSA) at 1; ¶ 4(A); Ex. E (Task Order) at 1.) The Task Order expressly states that the Project Budget is only "provided for cost analysis purposes." (Pressment Decl., Ex. E (Task Order) at 1.) The actual payment terms were expressly governed "pursuant to the *Payment Schedule*." (*Id.* (emphasis added).)

---

[5]     This Court previously denied Inspire's motion to dismiss the quasi-contractual claims, stating "it is possible that the contract could be found unenforceable," and citing *Miami Valley Mobile Health Services, Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925 (S.D. Ohio 2012) (ECF No. 24 (Order) at 2). In that case, the defendant had not yet answered and it was therefore "not clear" whether the defendant conceded the validity and enforceability of the contracts. *Id.* at 939. Here, the parties have repeatedly admitted, in pleadings, that the MSA and Task Order are valid and enforceable. These admissions distinguish this case from *Miami Valley*, and render summary judgment appropriate on Medpace's quasi-contract claims. *O'Neill*, 497 F.3d at 583; *C. Norris*, 2017 WL 1038958 at *10-11; *Premier*, 2016 WL 6124430 at *5; *Bickham*, 917 N.E.2d at 335.

Medpace does not dispute that it is seeking fees for its alleged provision of "clinical trial services" to Inspire. Thus, the terms of the MSA expressly govern this dispute and Medpace is precluded from seeking *any* payments beyond those permitted under the Task Order's Payment Schedule. (Pressment Decl., Ex. D (MSA) at 1; ¶ 4(A); Ex. E (Task Order) at 1, 13.)

Any claim that Medpace is entitled to payments outside of those permitted under the Task Order's Payment Schedule (in quasi-contract or otherwise) is also precluded by the fact that the Agreements expressly require that any changes to the Payment Schedule or Project Budget be memorialized in a written Contract Amendment agreed to by both parties. (Pressment Decl., Ex. D (MSA) ¶¶ 3, 19; Pressment Decl., Ex. E (Task Order) ¶ 4.) Such terms are fully enforceable under Ohio law. *Kelley v. Ferraro*, 936 N.E.2d 986, 994 (Ohio Ct. App. 2010); *Freeman-McCown v. Cuyahoga Metro. Housing Auth.*, 2000 WL 1594090, at *4 (Ohio Ct. App. Oct. 26, 2000). Medpace readily concedes that a Contract Amendment "was not executed." (Pressment Decl., Ex. J (Document Request Responses) at 10-11 (Response to Request No. 24).)

Where, as here, a contract is fully integrated and represents the parties' "full understanding" (Pressment Decl., Ex. D (MSA) ¶ 19; Ex. E (Task Order) ¶ 4), a plaintiff cannot proceed with claims in quasi-contract. *Corp. Comm'n Servs. of Dayton, LLC v. MCI Comm'ns Servs., Inc.*, 2009 WL 3756274, at *19-21 (S.D. Ohio Nov. 9, 2009); *Klaus v. Hilb, Rogal & Hamilton Co. of Oh.*, 437 F. Supp. 2d 706, 729-30 (S.D. Ohio 2006); *Aultman Hosp.*, 544 N.E.2d at 924; *Fontbank, Inc. v. CompuServe, Inc.*, 742 N.E.2d 674, 678-79 (Ohio Ct. App. 2000). Accordingly, Inspire is entitled to summary judgment as to Medpace's quasi-contract claims.

## B. Inspire Is Also Entitled To Summary Judgment With Respect To Medpace's Breach of Contract Claim (Count One)

Inspire is also entitled to summary judgment on Medpace's breach of contract claim with respect to the four Invoices *and* the additional amounts set forth in Medpace's November 2015

15

Letter that Medpace claims are owed for "Services rendered pursuant to the unfinished Task

Order." (Pressment Decl., Ex. A (SAC), ¶¶ 24-25; Ex. G (November 2015 Letter) at 1.)

### 1. *Inspire Is Entitled to Summary Judgment with Respect to the Invoices.*

As an initial matter, Inspire is entitled to summary judgment with respect to Medpace's

breach of contract claim for payment of the Invoices because each of the Invoices pertains to a

time period that followed Inspire's provision of its Termination Notice to Medpace.[6]

Under Section 6(B) of the MSA, Inspire was entitled to "terminate any Task Order

without cause upon giving MEDPACE sixty (60) [days] notice of such termination unless

otherwise agreed to by the Parties." (Pressment Decl., Ex. D (MSA) ¶ 6(B)).)  Thereafter, Inspire

was only obligated to pay Medpace for "Services rendered pursuant to the unfinished Task Order

*prior to such termination* and any non-cancelable expenses incurred in connection with

MEDPACE's performance of Services" under the Task Order.  (*Id.* ¶ 6(E) (emphasis added).)

Here, Inspire properly exercised its rights to terminate the Task Order under Section 6(B)

of the MSA by providing Medpace with the Termination Notice.  (Pressment Decl., Ex. F

(Termination Notice) at 1.)  The Termination Notice is clear and unambiguous: it is addressed to

Deborah Schmalz -- Medpace's Senior Director of Regulatory Affairs -- and states, "effective

immediately, please keep all [Trial] activity to a minimum, with the exception of safety-related

issues which should be handled on a per-need basis."  (*Id.*)  In fact, the Termination Notice

ordered a "[c]omplete freeze" as to all but 4 of the 35 service categories -- permitting only safety

related reporting activities to continue "on a per-need basis."  (*Id.* at 1-2.)  Medpace admits that it

received the Termination Notice, by email, on September 25, 2014.  (Pressment Decl., Ex. K

(Supplemental Interrogatory Responses) at 1-2.)

---

[6]   The payments are: (1) Quarterly Payment 7 ($150,617); (2) Quarterly Payment 8 ($150,617); (3) Quarterly
      Payment 9 ($100,411); and (4) Quarterly Payment 10 ($66,941) (Pressment Decl., Ex. E (Task Order) at 13.)

16

Medpace also admits that, at the time Inspire sent the Termination Notice to Medpace, Inspire had made every single payment to which Medpace could even arguably have been entitled under the Task Order's Payment Schedule.  (Pressment Decl., Ex. E (Task Order) at 13; Ex. C (Reply) ¶¶ 70-71.)  Specifically, Inspire made the following Milestone Payments: the Execution Payment (Payment 1), Quarterly Payments 1-5 (Payments Nos. 2, 3, 5, 7 and 9). Inspire subsequently made an additional Quarterly Payment (Quarterly Payment 6 (Payment No. 11)) that was not scheduled to come due until November 30, 2014.[7]  (Pressment Decl., Ex. G (November 2015 Letter); Ex. E (Task Order) at 13; Ex. C (Reply) ¶¶ 70-71.)  Thus, Inspire satisfied its obligation, under Section 6(E) of the MSA, to pay Medpace for "Services rendered pursuant to the unfinished Task Order prior to [the] termination [of the Task Order]."

What Medpace's breach of contract claim with respect to the Invoices seeks is *not* payments owed for periods "*prior to such termination[,]*" but, rather, Quarterly Payments for periods which *followed* Inspire's termination of the Task Order.  (*Id.*) (emphasis added.)  In fact, one of the Invoices for which Medpace seeks payment (Quarterly Payment 10 in the amount of $66,941) would not have become due until November 30, 2015 -- six days after *Medpace* claims that *it* terminated the Task Order.[8] (Pressment Decl., Ex. A (SAC) ¶ 29; Ex. G (November 2015 Letter).)[9]  Medpace is not entitled to these payments.

The mere fact that the Termination Notice was sent to Medpace at a different address

---

[7]    No Patient Related Payments ever became due. (Pressment Decl., Ex. I (Interrogatory Responses) at 8.)

[8]    In its discovery responses Medpace now claims that the fourth Invoice in the amount of $66,941 did not pertain to a Quarterly Payment (as alleged in Paragraph 24 of the SAC), but, rather, to the completion of the Database Lock.  (*See* Pressment Decl., Ex. A (SAC), ¶¶ 24-25; Ex. I (Interrogatory Responses) at 6-7 (Response to Interrogatory No. 6).)  Regardless, both of these payments would have only come due after Medpace itself contends that it terminated the Task Order.  (Pressment Decl., Ex. E (Task Order) at 13.)

[9]    Medpace's claim that it is entitled to interest at a rate of 18% per annum with respect to the Invoices pursuant to Section 4(D) of the MSA also fails.  (Pressment Decl., Ex. A (SAC), ¶ 26.)  Section 3 of the Task Order expressly states that "this Section 3 of this Task Order shall control with regard to the payment terms under this Task Order" and does not provide for interest at any rate.  (Pressment Decl., Ex. E (Task Order) at 2.)

than the one specified in the MSA's notice provision does not alter this conclusion. (*Compare* Pressment Decl., Ex. D (MSA) ¶ 7 *with* Ex. F (Termination Notice) at 1.)  Under Ohio law, strict compliance with a notice provision is not required for a contractual notice to be effective. Rather, failure to comply with a contractual notice provision may be "harmless if there is evidence of actual or constructive notice." *Daniel E. Terreri & Sons, Inc. v. Mahoning Cnty. Bd. of Comm'rs*, 786 N.E.2d 921, 932 (Ohio Ct. App. 2003); *Triangle Props. Inc. v. Homewood Corp.*, 3 N.E.3d 241, 257-58 (Ohio Ct. App. 2013); *Stonehenge Land Co. v. Beazer Homes Invs., L.L.C.*, 893 N.E.2d 855, 863-64 (Ohio Ct. App. 2008) (notice sent to different address than one specified in contract was effective).  Medpace does not dispute that it received Inspire's Termination Notice. (Pressment Decl., Ex. I (Interrogatory Responses) at 4.)

Nor is the fact that the Termination Notice is not labeled a "Termination Notice" and states that Medpace should keep all work under the Task Order "to a minimum" a basis to dispute the effectiveness of the Termination Notice.  Indeed, Inspire ordered a "complete freeze" as to everything but safety-related issues as is required by law.  Yet, even were Medpace entitled to payment for work on safety-related issues, Medpace has now had three opportunities to allege that it performed such work -- it has never done so.  Thus, Inspire is entitled to summary judgment as to Medpace's breach of contract claim with respect to the Invoices.

### 2.     *Inspire Is Entitled to Summary Judgment with Respect to the Remainder of Medpace's Breach of Contract Claim.*

Even were this Court to find that a question exists as to the effectiveness of Inspire's Termination Notice -- and, respectfully, it should not -- Medpace's claim would still be limited to, *at most*, the four Invoices issued between the date of Inspire's Termination Notice and the date on which Medpace contends that *it* terminated the Task Order (Payment Nos. 13, 15, 17 (Quarterly Payments 7-9) and 20 (the Database Lock Payment)) -- the total of which is

18

$468,586.00.  Inspire would be entitled to summary judgment as to the balance of Medpace's breach of contract claim by which it seeks payment for alleged "services" beyond those invoiced under the MSA and Task Order.  (Pressment Decl., Ex. G (November 2015 Letter) at 1.)

Indeed, as was the case with Medpace's quasi-contract claims, the clear and unambiguous language of the MSA expressly prohibits Medpace from seeking *any* amounts beyond those provided for under the Task Order's Payment Schedule.  The MSA expressly states that Inspire "agrees to pay MEDPACE for Services rendered *pursuant to the Project Budget and Payment Schedules included in each Task Order*."  (Pressment Decl., Ex. D (MSA), ¶ 4(A) (emphasis added).)  The MSA's merger and integration clauses further provide that the MSA represents "the full understanding of the Parties with respect to the subject matter hereof and supersedes all existing agreements and all other oral, written or other communications between the Parties," and "shall not be amended, modified or supplemented in any way except in writing and signed by a duly authorized representative of [Inspire] and MEDPACE."  (*Id.* ¶ 19.)

Any change to the Project Budget, Payment Schedule or Project Schedule had to be set forth in a "written amendment to the Task Order (a 'Contract Amendment')." (*Id.* ¶ 3.)  Medpace readily concedes that the parties never executed a Contract Amendment.  (Pressment Decl., Ex. J (Document Request Responses) at 10-11 (Response to Request No. 24).)  Where, as here, the parties' agreement is fully integrated into an unambiguous contract, a court must enforce the contract according to its plain language.  *Aultman Hosp.*, 544 N.E.2d at 924; *Flynn v. State Farm Mut. Auto. Ins. Co*., 2013 WL 950825, at *7 (S.D. Ohio Mar. 12, 2013).  Thus, Medpace is precluded from recovering fees beyond those prescribed by the Task Order's Payment Schedule.

The fact that Medpace alleges that *it* -- and not Inspire -- terminated the Task Order does not give Medpace any right to seek payments beyond those provided for under the Task Order's

Payment Schedule.  The MSA's "Termination" provision states that "[i]n the event of any termination of a Task Order before completion, [Inspire] agrees to pay MEDPACE for all Services rendered *pursuant to the unfinished Task Order* prior to such termination . . . ." (Pressment Decl., Ex. D (MSA), ¶ 6(E) (emphasis added).)  Thus, even in the event that Medpace elected to terminate the Task Order, the terms of the Task Order -- including, but not limited to, the Payment Schedule -- would still have governed.  Accordingly, at a minimum, Inspire is entitled to summary judgment with respect to the portion of Medpace's breach of contract claim that seeks amounts beyond those set forth in the Invoices.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Inspire respectfully requests that the Court grant Inspire's Motion and: (1) dismiss each of Medpace's affirmative claims with prejudice; or, in the alternative, (2) dismiss each of Medpace's claims, except as to Medpace's claim for payment of the Invoices along with such other and further relief as this Court may deem just and proper.

Respectfully submitted,

_____
Ted T. Martin (Ohio - 0014204)
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202-4074
Telephone:  (513) 929-3400
Facsimile:   (513) 929-0303
tmartin@bakerlaw.com

Jonathan D. Pressment (*Admitted Pro Hac Vice*)
William Feldman (*Admitted Pro Hac Vice*)
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Telephone:  (212) 918-8961
Facsimile:   (212) 884-9561
Jonathan.Pressment@haynesboone.com
William.Feldman@haynesboone.com
*Attorneys for Defendant InspireMD, Ltd.*

20